EDMUND YATES v. STEPHEN HURST, AND M. BUCK, TRUSTEE.

*Trustee Process. Soldier's Bounty. Contract. Consideration.*

When a purchaser of a claim against a town for a soldier's bounty receives the pay on it, the money received becomes the property of the purchaser, and he becomes the debtor of the soldier for the price, as consideration, which he agreed to pay for the claim, and may be held as trustee of the soldier therefor.

B bought of H his claim for a town bounty, but before the claim was paid, H denied the sale and protested against payment to B, and the town declined to pay B until matters were satisfactorily arranged between B and H. This was consummated by B agreeing to pay certain debts owing by H, including the plaintiff's debt against H, in addition to the price first agreed upon, and the town then paid the claim to B. *Held*, that the adjustment of the dispute was sufficient consideration of the promise to pay the plaintiff's debt, and that B was chargeable as trustee of H for that amount.

TRUSTEE PROCESS. The commissioner, appointed to take the disclosure of the trustee and report the facts, reported " that said Stephen Hurst duly enlisted as a volunteer, in and for the town of St. Albans, and to make up the required quota of said town, in the early part of the rebellion, was regularly mustered into the service and army of the United States, in which he remained doing duty during the time for which he enlisted, and at the end of said time he was duly and honorably discharged, and a written discharge from said service was delivered to him, and he returned to the town of St. Albans. Sometime after the return of said Hurst, he applied to said Buck to aid him in inducing the town to vote to him, and each of several others, a bounty of three hundred dollars each; and at the same time showed to said Buck his written discharge. Buck, at the time deeming the chance of obtaining any bounty from the town so remote and uncertain, declined to have anything to do in the matter; but shortly after Hurst again called on Buck and proposed to Buck that if he (Buck) would pay to him (Hurst) the sum of fifteen dollars, he would sell and deliver to him his discharge, under which, if the town should thereafter vote to pay a bounty, he (Buck) should have one half and Hurst the other half. This proposition Buck accepted, and paid to Hurst said sum of fifteen dollars, and took said discharge. Sometime subsequent to this transaction, said town of St. Albans, at a regular meeting, voted to pay each of said volunteers, said Hurst with the others, the sum of three hundred dollars, but did not vote to raise any tax for that purpose. Not long (but at what time did not appear) after said town meeting at which said vote was passed, said Hurst called on said Buck

and proposed to sell to him the other half of his bounty, saying he wanted some clothes ; that he had an opportunity to go to Boston into a bakery establishment, and that if he (Buck) would furnish him with clothes to go with, he would sell to him the other half of his said bounty. Thereupon said Buck did agree to furnish Hurst with a suit of clothes, and said Hurst sold to said Buck the other half of his said bounty. The clothes furnished by said Buck to Hurst amounted to the sum of $37.

" Subsequent to said time, but when did not appear, said town voted to raise a tax to pay said bounty of three hundred dollars to Hurst and the other volunteers. After said last mentioned vote, and after the money was raised upon said tax, the selectmen of St. Albans held a meeting for the purpose of paying said bounties to the several persons entitled thereto ; and at said meeting said Buck appeared with a written order, from said Hurst to said selectmen, to pay to said Buck said bounty of $300. But it having been represented to the selectmen by Doctor Sherman, then sheriff of the county, and who then held said Hurst in jail, that Hurst owed sundry debts to different persons, and among them to the plaintiff in this suit, to whom Hurst was indebted in the sum of $45, and said Sherman then protesting, in the name and as agent of Hurst, against the payment of said bounty to Buck, they then declined to pay said bounty to Buck until matters were satisfactorily arranged between said Buck and Hurst. Subsequent to this, on the same day, for the purpose of an arrangement between them, Buck met Hurst and Dr. Sherman at the jail, and Hurst then claimed to Buck that he had not sold the bounty to him, and it was then agreed by Buck, and in the presence of Hurst and Dr. Sherman, that he, (Buck), in addition to what he had already paid to Hurst, namely, $52, to William N. Smith $40.50, to B. Paull $14.50, to Weeks $7.50, would pay to the plaintiff his debt against Hurst of $45, and pay to said Sherman for Hurst $100.

" The plaintiff was not present at said interview, and had no knowledge in regard to it, and never agreed to look to Buck for his debt against Hurst, nor to accept Buck as paymaster. The foregoing arrangement having been fully agreed upon by said Buck, and the selectmen notified of it, they paid said bounty of $300 to Buck, and Buck paid to said Sherman for Hurst said $100, but refused to pay to the plaintiff his said debt against said Hurst of $45. The whole amount paid by said Buck to and for said Hurst is $214, leaving $86 of said bounty in his hands.

" If, from said disclosure and the facts here reported, the court should be of opinion, that in point of law, (which your commis-

sioner does not undertake to decide), Buck is liable as trustee of said Stephen Hurst, your commissioner finds and decides that said Buck has in his hands and possession the sum of forty-five dollars and interest from December, 1866. And if, from the foregoing facts and disclosure, the court should be of opinion that said Buck ought not to be holden as trustee for said Hurst, then your commissioner decides that he ought to be discharged, with his cost."

The county court, at the September term, 1867, Wilson, J., presiding, rendered judgment *pro forma*, that said Buck is liable, as trustee of Hurst, for the sum of $45, and interest from December, 1866, to which the trustee excepted.

————, for the trustee.

If the trustee is liable at all, it is by reason of that bounty money which he holds. But the General Statutes provide that "no money payable or received" under the provisions of the act authorizing towns to vote bounties to volunteers "shall be subject to the trustee process." (Gen. Sts., 118.) This statute is one that should be liberally construed. The trustee is surely not liable unless he is indebted to Hurst; and if indebted to Hurst, it is for the bounty money and nothing else.

The commissioner finds that the trustee did buy of Hurst the entire bounty in question and pay him therefor; and that Hurst gave to the trustee an order in writing directing the selectmen to pay the bounty to him. The sale was then complete, and the trustee the exclusive owner of the bounty. Hurst had no more right to demand it, or any part of it, than a stranger to the transaction would have. Therefore, his interference, to prevent the payment of the bounty by the selectmen to the trustee, was an illegal act; that illegal act extorted the promise upon which it is sought to make the trustee liable. And the only consideration for the promise by the trustee to pay the forty-five dollars was the withdrawal of that unlawful interference. The promise of the trustee to pay $45 to Yates was clearly without consideration. *Larabee* v. *Ovit*, 4 Vt., 45; *Pomeroy* v. *Slade et al.*, 16 Vt., 220.

*Bailey, Davis & Adams*, for the plaintiff.

The trustee made an express promise to pay the plaintiff forty-five dollars for the defendant. The promise was upon sufficient

consideration. It was made to settle a disputed claim. *Stoddard* v. *Mix*, 14 Conn., 11. It makes no difference that the commissioner found that Buck's claim was right and Hurst's wrong. *Barlow* v. *Ocean Ins. Co.*, 4 Met., 270. To avoid a lawsuit is a sufficient consideration to support a promise. *Perry* v. *Buckman*, 33 Vt., 7 ; 1 Parsons on Con., 363, 364.

The statute exempting bounties from trustee process does not apply to this case. Gen. Sts., 118. The first section empowers towns to grant and vote money for two purposes : first, to be paid to volunteers ; second, to pay debts contracted by the selectmen to pay volunteers, agreeably to a previous vote, or to pay the amount of bounties which may have been paid to volunteers by subscription or private means. The second section provides that no money, *payable* or *received* under the provisions of this act, shall be subject to the trustee process. First, what do the words *payable* and *received* mean ? *Payable* must mean payable by the *town* to the *volunteer*. The town and the volunteer are the only parties. It cannot mean payable from a third person to the volunteer. When Buck received it, the town was discharged from its liability, and Buck became the debtor. It thereby ceased to be bounty money. *Manchester* v. *Burns*, 45 N. H., 482.

The word *received* refers to money raised under the second clause of the first section. The construction warrants this interpretation. *Payable* refers to the first clause, *received* to the second. It means money either received by the selectmen on loans to pay to volunteers, or else to money due to third parties for such loans or voted by the town to pay the expense of bounties raised by subscription or by private means and *received* by the volunteer. *Morse* v. *Towns*, 45 N. H., 185 ; *Scott* v. *Brigham and tr.*, 27 Vt., 561 ; *Manchester* v. *Burns*, 45 N. H., 482.

Buck, even if he had been Hurst's attorney, could not be compelled to pay him the identical money he received from the town.

There had been a settlement of the *bounty* between Buck and Hurst. This would change it to a simple indebtedness, and Buck could not be said to hold this money in a fiduciary capacity. It thereupon ceased to be bounty.

The opinion of the court was delivered by

BARRETT, J.    Though, as found by the commissioner, Buck bought the defendant's claim for a bounty for $15 in money and a suit of clothes at $37, the report shows that afterward, and before the bounty money was paid over to Buck, the defendant denied that he had sold his claim to Buck, and protested against the payment of the bounty money to him; and the selectmen declined to pay it to him until matters were satisfactorily arranged between him and the defendant.    Thereupon they proceeded to make such arrangement, and the same was consummated by Buck's agreeing to make several payments on debts owing by the defendant, and, among them, the debt of the plaintiff of $45.    "The foregoing arrangement having been fully agreed upon by said Buck, and the selectmen notified of it, they paid said bounty of $300 to Buck." When the claim had been thus bought by Buck, the money, when paid to him, was no longer *bounty money* belonging to the defendant.    Buck did not receive nor hold it as the property of the defendant, but as his own property.    His relation to the defendant became that of *debtor* for the price, as consideration, which he had agreed to pay for the claim, and not that of attorney, agent or bailee of the defendant.    He did not owe him the *bounty money*, but he owed him for it, according to his (Buck's) agreement. The final arrangement was not an appropriation of the *bounty money* to the payment of the plaintiff's debts, but an appropriation or provision for the payment of that debt out of what Buck was to pay for the claim.    There was thus a credit of the defendant in the hands of Buck as the debtor of the defendant.    Such credit could be reached by trustee process by the plaintiff, unless precluded by some provision of the law.    The provision of the statute exempting bounty money does not embrace this case.    The defendant is not claiming immunity for this credit against this process; on the contrary, he has expressly waived any claim for the sacredness of it on any score, and sequestered it to the very purpose of paying the plaintiff's debt.    This being so, it should be matter of indifference to the trustee to whom he pays that money, provided such payment will discharge *pro tanto* his indebt-

edness to the defendant, and that would certainly be the effect of paying it upon a judgment against him as trustee in this suit.

It is needless to discuss the question of consideration for the trustee's agreement, in virtue of which the $300 was paid to him by the selectmen; for, upon the facts reported, it falls clearly within the principle and rule as to agreements and promises made in adjustment of disputes about controverted claims; and so we regard the consideration to have been valid and ample to render effectual his promise to pay, so far as that promise entered into the consideration upon which said claim was sold and paid to the trustee. Nor need we discuss whether the present plaintiff could have recovered said $45 in an action of assumpsit against Buck. We assume that he could not, and thus an unobstructed course is open for the proper office of the trustee process to do justice to the plaintiff, the defendant, and the trustee, without resort to other means to compel the trustee to pay what he owes to the defendant, as shown by the report in this case.

The judgment is affirmed.